### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| Tevaris Crawford,<br>    Petitioner, | ) )  ) |
| v. | ) )  ) |
| Mack Bailey,<br>    Respondent. | ) )  ) |

**1:21cv 527 (CMH/IDD)**

## MEMORANDUM OPINION

Tevaris Crawford ("Petitioner" or "Crawford"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which challenges the validity of his six May 24, 2004 convictions in the Circuit Court for the City of Richmond, Virginia: one count of malicious wounding; two counts of attempted robbery; and three counts of use of a firearm in commission of a felony. Commonwealth v. Crawford, Case Nos. CR03-687-F, CR03-689-F, CR031190-F, through CR031193-F. The Respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits [Dkt. Nos. 16-19, 25] and Petitioner has exercised his right to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) to the motion to dismiss. [Dkt. Nos. 29, 30]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the respondent's Motion to Dismiss must be granted and the petition will be dismissed with prejudice.

### I. Procedural History

A jury sitting in the Circuit Court for the City of Richmond convicted petitioner of one count of malicious wounding, in violation of Virginia Code § 18.2-51; two counts of attempted robbery, in violation of Virginia Code §§ 18.2-26 and 18.2- 58; and three counts of use of a

firearm in commission of a felony, in violation of Virginia Code § 18.2-53.1. By order entered May 24, 2004, the trial court sentenced Crawford to a total of twenty-two years in prison.

Crawford's appeal to the Court of Appeals of Virginia was dismissed on October 18, 2004, because essential transcripts had not been filed. Record No. 1384-04-2. Crawford filed a habeas petition on June 30, 2005 in the Supreme Court of Virginia Supreme Court, which granted him a delayed appeal. Record No. 050679. On March 10, 2008, the Court of Appeals denied Crawford's subsequent petition for appeal in the Court of Appeals alleging the evidence was insufficient to sustain his convictions. Record No. 1948-05-2. Crawford did not appeal the denial of his petition for appeal to the Supreme Court of Virginia.

By order entered November 19, 2007, the Supreme Court of Virginia denied and dismissed Crawford's petition for writ of habeas corpus, in which he alleged the ineffective assistance of trial counsel, finding that it was barred as a successive petition under Virginia Code § 8.01-654(B)(2). Record No. 070846. On February 11, 2009, the Supreme Court of Virginia dismissed Crawford's third state habeas petition because it was also successive under Virginia Code § 8.01-654(B)(2). Record No. 082286.

In October 2015, Crawford, by counsel, filed a motion to set aside his 2004 criminal verdict in the Circuit Court for the City of Richmond. [Dkt. No. 18-4].[1] Acknowledging that his conviction became final twenty-one days following its entry pursuant to Rule 1:1 of the Supreme Court of Virginia, Crawford sought to establish that the criminal judgment against him was void *ab initio* arguing it was obtained by extrinsic fraud.[2] (Vol. II at 42-45). Crawford argued that the

---

[1] The manuscript record of the motion to vacate is in the second volume of the criminal record in Case Nos. CR03-687-F, CR03-689-F, CR031190-F, through CR031193-F (hereinafter "Vol. II at ___").

[2] See generally Ellett v. Ellett, 542 S.E.2d 816, 818 (Ct. App. Va. 2001) (discussing what is and is not extrinsic fraud in Virginia and observing that "[e]xtrinsic fraud does not include fraud relating to a 'matter on which the judgment or decree was rendered,' or involving an 'act or testimony the truth of which was, or might have been, in issue in the proceeding before the court which resulted in the judgment that is thus assailed.'") (citations omitted).

criminal judgment had been obtained by extrinsic fraud because the prosecution had violated

Brady v. Maryland, 373 U.S. 83 (1963) because it had failed to disclose a police report that

allegedly contained "exculpatory evidence." Crawford described the "exculpatory evidence" as

the victim's description of the person who shot her as a "black male, twisted braids" with "a

chipped front tooth up top," as well as a description of the assailant's car as a "white Impala-2

Doors, first three letters (LDF) VA-plates." (Vol. II at 40). Crawford further argued that the

alleged Brady violation supported an independent action under Virginia Code § 8.01-428(D).

In response, the prosecutor argued that Crawford had not established a Brady violation or

any exception to Rule 1:1. Crawford's counsel and the prosecutor argued the matter on

December 21, 2015. During argument, the prosecutor proffered, without objection, that the

prosecutor at Crawford's criminal trial had met with one of Crawford's original defense

attorneys and "went over the [prosecutor's] file pretty thoroughly," and that there was discovery

provided in addition to "what's in the Court's file." (12/21/15 Tr. at 19). The prosecutor also

noted that the allegedly undisclosed exculpatory evidence that had not been provided was

actually contained in the presentence report. Crawford's attorneys stated the presentence report

had been presented to Crawford prior to sentencing. (Id. at 24, 26).[3] By order entered January 11,

2016, the circuit court denied the motion to set aside the verdict, finding that Crawford had not

established a Brady violation, that he had not established that the judgment was procured by

extrinsic fraud, and that he had not established any of the elements of an independent action

under Virginia Code § 8.01-428(D). (Vol. II at 62-65).[4]

---

[3] The transcript of the sentencing on May 24, 2004, establishes that trial counsel and Crawford had gone over the presentence report. (5/24/04 Tr. at 6). Trial counsel asked the trial judge to make certain corrections based upon their review of the presentence report. (Id. at 9-10).

[4] Crawford's counsel filed a notice of appeal, but there is no evidence in the record that the appeal was perfected. (Vol. II at 125-28). The online records of the Court of Appeals of Virginia, http://www.courts.state.va.us/ (click on Case Status and Information, click on Court of Appeals and search "Crawford, Tevaris") (last viewed Jan. 26, 2022),

On November 28, 2016, Crawford filed a pro se Motion to Vacate his convictions and filed an amended motion on December 1, 2016, in which he alleged his trial counsel breached their fiduciary duty to him. Case Nos. CR03-687-F, CR03-689-F, CR031190-F through CR031193-F.[5] (MTV at 14-109). On January 26, 2017, the trial court denied Crawford's motion, finding it was barred by res judicata. (MTV at 183).[6] Crawford noted an appeal, which the Supreme Court of Virginia refused on February 7, 2018, and his petition for rehearing was refused on March 22, 2018. Crawford v. Commonwealth, Record No. 170509.

Crawford's § 2254 habeas petition raises the following allegations:

1. "(Gateway Claim) Actual Innocence." New evidence from a police report. [Dkt. No. 5].[7]

2. "Prosecutorial Misconduct by withholding favorable and material evidence in violation of Brady" and the 'Due Process Clause." [Id at 7].

3. "Prosecutorial Misconduct by knowingly using false testimony in violation of Napue' and the "Due Process Clause." [Id. at 8].[8]

---

indicate that a notice of appeal was filed, but no petition or brief was ever filed. The Court of Appeals of Virginia transferred to the Supreme Court of Virginia on December 14, 2016 because it did not have jurisdiction. Crawford v. Commonwealth, Record No. 0219-16-2. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records") (collecting cases); see, e.g., Lynch v. Leis, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial notice of state court records available to public online). The online records are consistent with Crawford's § 2254 petition, which indicates that he did not appeal the January 11, 2016 dismissal. [Dkt. No. 1 at 7-8, Ground Two, ⁋ (d)(4)].

[5] The records of the pro se motion to vacate are not bound in a folder and will be referenced as "MTV at __."

[6] On January 31, 2017, Crawford filed a pro se "Motion to Strike Commonwealth's Evidence and Ex Parte Motion to Invoke Presumption of Fraud Rule to Plaintiff Motion to Vacate Convictions" in the circuit court. Case Nos. CR03-687-F, CR03- 689-F, CR031190-F through CR031193-F. (MTV at 186-89). The circuit court denied the motion on February 1, 2017. (MTV at 190). Respondent states Crawford did not appeal the order denying his motion, but the Assignment of Errors specifically alleges the trial court erred in entering the February 1, 2017 order. VSCT R. 170509 at 147.

[7] Petitioner acknowledges the purpose of Claim 1 in his petition is "to excuse" his untimely petition. [Dkt. No. 1 at 5]. The Fourth Circuit has held that an actual innocence claim "does not by itself provide a basis for relief," but instead serves as a "'gateway through which a habeas petitioner must pass' to have his substantive claims heard on the merits." Teleguz v. Pearson, 689 F.3d 322, 327-28 (4th Cir. 2012) (quoting Sibley v. Culliver, 377 F.3d 1196, 1207 n.9 (11th Cir. 2004) and Coleman v. Hardy, 628 F.3d 314, 318 (7th Cir. 2010)). Claim 2 alleges a Brady violation and the evidence alleged in support of Claim 2 is also the evidence upon which Crawford's actual innocence claim is based.

[8] Napue v. Illinois, 360 U.S. 264, 269 (1959) ("knowingly us[ing] false evidence, including false testimony, to obtain a tainted conviction" violates Due Process Clause).

4. "The Denial of the Right to Counsel at Pre-Trial Photo Line-Up in violation of Stovall Rule and Due Process Clause." [Id. at10].[9]

## II. Summary of Facts

The Court of Appeals of Virginia summarized the facts as follows:

Cyerra Gonder and Chontae Bates were transgender women …. In the early morning hours of March 14, 2003, Bates and Gonder were in Gonder's car driving to a late-night club for the "let out," when people would leave the club and congregate in the parking lot after the club was closed. While they were stopped at a traffic light, a white car pulled alongside their car. Id. at 69-70, 98. Gonder recognized the passenger as someone who used to shop at a convenience store where he had formerly worked. Gonder did not know the driver but identified him as [Crawford] at trial.

Gonder and Bates spoke with the men in the white car, and Gonder mentioned they were going to a club. Gonder and the passenger exchanged phone numbers. When Gonder and Bates arrived at the club, Gonder received a call on her cell phone from a person stating he was the driver of the car at the stoplight. Gonder stated that the caller asked to meet him and Bates. Gonder told the caller he was not sure what they were doing later. The person called a second time and told Gonder that they wanted to "get together with them and have sex." At this point, Gonder told the caller that he and Bates were transsexuals and that they did not want to be bothered. The caller stated, "We don't fuck around like that. I don't get down like that," and hung up the phone.

Soon afterward, Gonder received another phone call and the caller indicated that the two of them were "cool with [them] being transsexuals." Gonder told the men they could meet, but that "nothing was going to happen." Gonder and Bates left the club and returned home when Gonder received another call. The caller inquired whether they were home yet, and Gonder gave them directions to the apartment.

[Crawford] and the passenger came into the apartment and, after some time, started drinking beer and smoking cigarettes. Gonder testified the four were talking when suddenly the passenger kicked Gonder in the face. A fight ensued which led down the hall into Gonder's bedroom. Gonder testified he and Bates were trying to keep [Crawford] and the passenger out of the bedroom but they had wedged their bodies in the door. Id. at 135-36. When [Crawford] brandished a gun, Gonder and Bates retreated into the bedroom.

---

[9] Stovall v. Denno, 388 U.S. 293, 302 (1967) (if under facts and circumstances of a case an identification procedure is "so unnecessarily suggestive" may violate Due Process Clause); see also Perry v. New Hampshire, 565 U.S. 228, 239 (2012) (a suggestive procedure does not necessarily result in the suppression of an identification; and the reliability of an identification is assessed "on a case-by-case basis" to determine if a witness's "ability to make an accurate identification" are "outweighed by the corrupting effect" of law enforcement suggestion).

Crawford told the passenger to "get the money." Id. at 138. The passenger was running around the apartment, grabbing CDs and DVDs while [Crawford] continued to point the gun at Bates and Gonder. Gonder recounted that [Crawford] told the passenger to get out of the way and that he [Crawford] was going to shoot them. Gonder testified at trial that Crawford shot Bates and shot Gonder in the face.

Seventeen days after the incident, Gonder identified [Crawford] as the shooter in a photo lineup. Phone records showed that [Crawford's] mother's phone was used to call Gonder's phone between 1:30 a.m. and 1:58 a.m. that morning. A beer bottle and a cigarette butt tested positive for [Crawford's] DNA.

In his defense, [Crawford] testified that he and his friend James had been sitting on [Crawford's] front porch when James asked [Crawford] to go riding. [Crawford] stated that when they stopped at the traffic light, James stated that he knew one of the girls, and started talking to them. When [Crawford] and James returned to [Crawford's] home, James asked to use [Crawford's] phone. James proceeded to make a series of calls, and then asked [Crawford] to take him to the apartment complex. [Crawford] agreed. [Crawford] testified he went in for a few minutes, drank a beer, smoked a cigarette, and left.

[Crawford's] mother testified she remembered the night because her fiancé asked her to marry him that evening. She gave [Crawford] her car keys to give his friend a ride about 2:00 a.m. Crawford's mother testified that Crawford returned about twenty minutes later with the car keys, and acted normally.

[Dkt. No. 18-2 at 1-3].

The Court of Appeals rejected Crawford's argument that minor inconsistencies in Gonder's testimony rendered Gonder's testimony inherently incredible. Observing that credibility was a matter for the jury, and that inconsistent statements did not make a witness's testimony incredible as a matter of law, the Court found the evidence sufficient to support Crawford's convictions. [Id. at 3-4].

In addition to the evidence summarized by the Court of Appeals of Virginia, the evidence at trial included two recordings of 911 calls placed from Gonder's apartment on the night of the shooting. (1/13/2004 Tr. at 149). In one recording, placed during the incident, Gonder identified her own voice as yelling "Okay, all right" in response to the passenger yelling "Get the money." (Id. at 151). Gonder identified Crawford's voice on the recording, yelling, "Back up. Back up."

6

Gonder made the second call to 911 when she recovered consciousness after having been shot. (Id. at 150).

Detective James Simmons investigated the shooting and testified that he was unable to "sit down and talk-talk" to Gonder until March 25, 2003, because Gonder, who had been shot in the face, was heavily medicated until that time. (Id. at 68). At that time, Gonder described the person who shot her as "a black male about 5'2" to 5'4" about 130 pounds. She said he [was] dark-skinned. He had a lot of corn-twisties in his hair." [Id. at 56]. Gonder described the other suspect, the passenger, as a "black male" who was 5'8" to 6 feet tall, "stocky" with "medium brown skin." (Id.). Gonder told the detective that the suspects drove a white vehicle and that Gonder had received several telephone calls on her cell phone from the driver of the vehicle between 1:30 and 1:58 a.m. on March 14, 2003. (Id. at 57).

Based on Gonder's information, Detective Simmons contacted Gonder's cell phone provider and identified the telephone number that had called her repeatedly during the relevant time as belonging to Crawford's mother. (Id. at 58). By reviewing records, Detective Simmons determined that Crawford was 5'4" tall, 130 pounds, with a dark complexion. The detective then obtained a photograph of Crawford, which he placed in a six-photograph lineup. (Id. at 58-59).

On March 31, 2003, Detective Simmons went to the hospital and showed Gonder the photo-lineup. (Id. at 60). At trial, the detective testified that he told Gonder that "he had six persons on this piece of paper" and that he "needed to get her to take a look at it and see if she recognized anybody on" the paper. (Id. at 60). Gonder "immediately" identified Crawford as the shooter in the photo-lineup. (Id. at 59, 67). When presented with the lineup, Gonder stated, "He shot me, and he shot Coya [Bates]." (Id. at 67-68).

7

After Crawford's arrest, police obtained a buccal swab from Crawford pursuant to a court order, which was used for comparison to DNA collected from a beer bottle and cigarette butt recovered from Gonder's apartment. (Id. at 64). The test results were positive for Crawford's DNA. (Id. at 244, 278-79, 296). Crawford was the only contributor to the DNA found on the beer bottle. (Id. at 278-79. 26).

On cross-examination, Crawford's mother admitted that she had not informed police that her son had been home by 2:20 a.m. on the night of the shootings. (Id.at 38). She was also confronted with recordings of jail telephone calls during which she advised Crawford that he could not "keep changing his story" and that he might be able to "get a self-defense instruction."[10] (Id. at 40). Finally, Crawford's mother denied making certain statements to Detective Sandy Ledbetter following the preliminary hearing in Crawford's case. (Id. at 59). On rebuttal, Detective Ledbetter testified that following the preliminary hearing Crawford's mother approached her in the hallway and asked "what [she] thought was going to happen." (Id. at 101). Detective Ledbetter answered that she did not know and referred Crawford's mother to Detective Simmons. Crawford's mother then stated, "Well what would you do?" (Id. at 102). Detective Ledbetter responded, "Excuse me?" and Crawford's mother continued, "What would you do if you thought you were going out with a woman and you were going out with a man.... They were over there drinking beer. He had to defend himself." (Id. at 102).

---

[10] In state habeas, the respondent submitted affidavits from Crawford's trial counsel in response to Crawford's allegations of ineffective assistance of counsel. (R. 070846 at Resp. Ex. And B). According to counsel, Crawford initially told counsel that he had shot the victims in self-defense. But, when "an audiotape of the 911 call made by one of the victims showed that a self-defense strategy was not viable," Crawford "abandoned that defense and claimed he had not been present at the scene of the shootings. When DNA evidence established [Crawford's] presence in the apartment, he admitted that he was there, but not when the shooting occurred." (Ex. A at 2; Ex. B at 2).

### III. Exhaustion and Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody

unless the petitioner has first exhausted his state remedies by presenting his claims to the highest

state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). In order to meet the

exhaustion requirement, a petitioner "must have presented to the state court 'both the operative

facts and the controlling legal principles.'" Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir.

2002) (quoting Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997)).

A petitioner must present his federal claims to the appropriate state court in the manner

required by the state court, so as to give the state court "a meaningful opportunity to consider

allegations of legal error." Vasquez v. Hillery, 474 U.S. 254, 257 (1986). A state prisoner does

not "fairly present" a claim for exhaustion purposes when the claim is raised in "a procedural

context in which its merits will not be considered." Castille v. Peoples, 489 U.S. 346, 351

(1989).

Crawford's Claims 1 and 2, in which he argues the prosecution failed to disclose

exculpatory evidence, were raised in the 2015 Motion to Set Aside the Verdict. The trial court

denied the motion on the merits, but Crawford did not appeal that ruling to the Virginia Supreme

Court. See Whitley v. Bair, 802 F.2d 1487, 1500 (4th Cir. 1986) (failure to appeal claims

disposed of by state habeas trial court constitutes a procedural default that bars further federal

review of the claims).

Claim 3 alleged that the prosecutor committed misconduct by knowingly presenting false

testimony in violation of Napue v. Illinois, and Claim 4 alleged the victim's identification of him

as the perpetrator "was tainted by the police exhibiting [him] to the identifying witness during a

pre-trial photo lineup, in the absence of [his] counsel" [Dkt. No. 1-1 at 24], were never presented

9

in state court, but are technically exhausted because they are deemed defaulted for purposes of federal habeas review. See Baker, 220 F.3d at 288 ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court."); see also Bassette v. Thompson, 915 F.2d 932, 936-37 (4th Cir. 1990).

If Crawford attempted to exhaust these claims now, they would be deemed defaulted, successive, and untimely. Any attempt to raise the Claims 3 and 4 now in state court would result in each claim being barred from consideration in state habeas under the rule of Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), or in any other motion by the twenty-one day limitation in Virginia's Rule 1:1. The Fourth Circuit has recognized that "the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision," Mu'Min v. Pruett, 125 F.3d 192, 196 (4th Cir. 1997), and that "Virginia courts regularly apply the Slayton default rule to federal constitutional claims that could have been, but were not, raised on direct appeal." Id. at 197. See King v. Dean, 955 F.2d 41 [published in full-text format at 1992 U.S. App. LEXIS 2345], n.* (4th Cir. 1992) (table) (recognizing claims not raised within twenty-one day limit of Rule 1:1 are barred as untimely);[11] Alston v. Johnson, No. 1:09cv1336, 2010 U.S. Dist. LEXIS 46151, *7 (E.D. Va. May 10, 2010) (the twenty-one days jurisdictional

---

[11] See Crowley v. Landon, 780 F.2d 440, 444 (4th Cir. 1985) (noting that Rule 1:1's termination of a trial court of jurisdiction after twenty-one days was "unambiguous"); see also Graham v. Warden, No. 7:19cv184, 2020 U.S. Dist. LEXIS 54029, *23-24, 49 (W.D. Va. Mar. 27, 2020) ("Virginia's Rule 1:1, divesting a trial court of jurisdiction after 21 days ... [is a] state procedural rule[], independent of any federal issue, and [is] firmly established and regularly followed in the Commonwealth. Accordingly, the state had every right to dismiss Graham's petition under the independent and adequate state procedural grounds."); Perry v. Clarke, No. 1:17cv664, 2018 U.S. Dist. LEXIS 214147, *13 (E.D. Va. Dec. 18, 2017) (noting it would be "futile" to allow the federal habeas petitioner "an opportunity to return to the state forum to attempt to exhaust ... a claim at this juncture, because it would be procedurally defaulted") (citing Sup. Ct. of Va. Rule 1:1); Hall v. Johnson, 332 F. Supp. 2d 904, 909 (E.D. Va.) (observing that because "the trial court lacked jurisdiction to entertain Hall's motion for resentencing pursuant to Rule 1:1 of the Rules of the Supreme Court of Virginia, that motion was not 'properly filed' and it follows that the § 2244(d) one-year limitations period was not tolled during the pendency of that motion"), appeal dismissed, 115 F. App'x 162 (4th Cir. 2004).

time limitation of Rule 1:1 "is an independent and adequate state law ground that precludes federal review of the merits of a claim") (citing Coleman v. Thompson, 501 U.S. 722, 740-41 (1991)), appeal dismissed, 411 F. App'x 626 (4th Cir. 2011).

Claims 3 and 4 would also be barred from consideration in state court habeas as both successive and untimely. Virginia Code § 8.01-654(B)(2) bars successive state habeas applications and is an independent and adequate bar precluding federal review of a claim. See, e.g., Clagett v. Angelone, 209 F.3d 370, 379 (4th Cir. 2000). Section 8.01-654(A)(2), the state habeas statute of limitations, is also an adequate and independent bar that precludes federal review of a claim. Sparrow v. Dir., Dep't of Corrs, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (recognizing § 8.01-654(A)(2) as an independent and adequate bar).[12]

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman, 501 U.S. at 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton v. Muncy, 845 F.2d 1238, 1241-42 (4th Cir. 1988). A court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996). Here, other than his assertion of actual innocence, Crawford has not established either cause or

---

[12] Section 8.01-654(A)(2) provides a state habeas petition challenging a criminal conviction or sentence "shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Crawford's convictions were entered on May 24, 2004, and his direct appeal concluded on April 10, 2006, when the time for filing a petition for appeal to the Supreme Court of Virginia expired. The Supreme Court of Virginia has previously dismissed two habeas petitions filed by Crawford as barred by Virginia Code § 8.01-654(B)(2). See, supra at 2.

prejudice to excuse his default, and the record does not indicate either cause or prejudice. Crawford's assertion of actual innocence has no merit.

First, as noted by the trial court in denying the motion to vacate, the three allegedly exculpatory items of evidence were in the presentence report, which Crawford (as well as his attorney) reviewed prior to the entry of the final judgment order on May 24, 2004. (Vol. II at 63). The sentencing transcript confirms that Crawford reviewed the presentence report prior to sentencing, which included the mention of the alleged description given to the detective by the victim — "black male, twisted braids" with a "chipped front tooth up top" and the vehicle was "a white Impala-2 Doors, first 3 letters (LDF) VA-plates." (5/24/04 Tr. at 6).[13] The sentencing transcript and presentence report negate Crawford's assertion he did not learn of the three allegedly exculpatory matters until 2014 [Dkt. No. 1-1 at 20], and establish he was not diligent in pursuing this matter.[14]

The "fundamental miscarriage of justice" exception applies where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 495-96 (1986). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration

---

[13] The portion of the presentence report in which the information alleged to be exculpatory appears is entitled the "Commonwealth's Version." (Vol. 1 at 118 (sealed); Presentence Report at 2-2a). This portion of the presentence report was discussed at sentencing and trial counsel raised objections concerning a matter on Page 2a of the presentenced Report. (5/24/04 Tr. at 8). Page 2a of the Presentence Report is the page upon which the allegedly exculpatory material is found. Petitioner attached the same pages (2-2a) to his petition. [Dkt. No. 1-1 at 48-49]. Further, Crawford, pro se, filed a pleading in the first Motion to Set Aside and included a copy of an affidavit he had filed in a proceeding against his trial counsel to get his file. The affidavit was incorporated into the pleading and the affidavit plainly states that Crawford obtained his file from his trial attorney, including the presentence report, in "January of 2009." (Vol. II at 73, 94).

[14] Crawford was clearly aware of the factual basis for substantive Claims 2 and 3 prior to the entry of the final judgment in the criminal proceedings. His assertion in his petition that he could not raise Claim 4 (the identification claim) in state habeas because "appointed appellate counsel ... fail[ed] to provide transcripts to State court" [Dkt. No. 1 at 10], ignores the undisputed fact that he was later awarded a belated appeal to the Court of Appeals of Virginia and had the opportunity to raise the claim at that time.

12

of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). "[T]enable actual-innocence gateway pleas," however, "are rare." Id. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536- 37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

"To be credible, such a claim requires petitioner to support his allegations of constitutional error with *new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324 (emphasis added). Assessment of a claim of actual innocence by a federal habeas court, however, "is not limited to such evidence." House, 547 U.S. at 537. Instead, "the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" Id. at 538 (quoting Schlup, 513 U.S. at 327-28)). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" Id. (quoting Schlup, 513 U.S. at 329)).

The actual innocence standard is "demanding and permits review only in the 'extraordinary' case." Id. (quoting Schlup, 513 U.S. at 327)). "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." McQuiggin, 569 U.S. at 399. In an assessment of the kind Schlup envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. Schlup, 513 U.S. at 332.

Crawford argues that the information contained in the police report that forms the basis of his Brady claim – namely, the victim's description of Crawford as a black male with "twisted

braids" with a "chipped front tooth up top" and the description of Crawford's vehicle as "a white Impala 2 Door" with a Virginia license who's first three letters were "LDF" [Dkt. No. 1-1 at 40, 49], constitutes new reliable evidence of his innocence. The assertion that the evidence is new is negated by the record. As the trial court found, the information regarding the victim's description of the assailant and the assailant's vehicle were summarized in Crawford's presentence report. [Dkt. No. 1-1 at 48-49] (portion of presentence report provided by petitioner). Thus, as the trial court found, this evidence was known to Crawford at least by the time trial counsel reviewed the presentence report before Crawford's sentencing hearing on May 24, 2004. (5/24/04 Tr. at 3-4). Indeed, at the sentencing hearing, defense counsel confirmed that he had received and reviewed the report with Crawford, and defense counsel offered corrections to the history portion of the presentence report, demonstrating that he and Crawford had discussed its contents. (Id. at 6-9).

Second, the police report is not sworn to by the officer, much less the victim, which diminishes Crawford's assertion that the alleged unsworn statement made by the victim, while still hospitalized after being shot is reliable. (1/13/2002 Tr. at 68-69). Cf. Blagmon v. Meyer, No. 3:19cv245, 2019 U.S. Dist. LEXIS 178796, *29 (E.D. Va. Oct. 15, 2019) (unsworn letter from trial witness professing petitioner's innocence but not recanting trial testimony not trustworthy or reliable evidence sufficient to support claim of actual innocence); United States v. White, 366 F.3d 291, 302 (4th Cir. 2004 ) (observing that "unsworn statements in memoranda ... do not constitute evidence") (remanded for evidentiary hearing on different evidence).

Third, the evidence Crawford relies upon does not meet the stringent standard under Schlup. While Crawford characterizes the police report as containing exculpatory evidence identifying a different suspect altogether, the information in it could, at best, have been used to impeach the victim's description of Crawford.

Indeed, at trial, Detective Simmons testified that the victim, Gonder, had described Crawford as having "a lot of corn – twisties in his hair," (1/13/04 Tr. at 56), any impeachment of that statement could have been presented in the form of Crawford's own driver's license, which he was already aware and which existed at the time of trial. (Vol. II at 93, driver's license photograph, taken on March 13, 2003).[15]

Finally, the victim's description of Crawford's car as a 2-door white Impala, instead of the 4-door Malibu that Crawford admitted in his trial testimony that he drove the night he met the victims does not meet the high standard of <u>Schlup</u>. The victim testified at trial that she saw Crawford drive a "white car," and Crawford admitted that he was driving his mother's white Malibu when he and James met the victims and when he and James drove to the victims' apartment. (1/13/04 Tr. at 98, 117-18; 1/14/04 Tr. at 77). The description of the car does not indicate another suspect, when Crawford admitted that he drove the car, interacted with the victims, and went to their apartment on the night of the shootings.

Given all of the evidence at trial – including Gonder's immediate and unwavering identification of Crawford as the person who shot her, the corroborating evidence of the 911-recording on which Crawford's voice could be heard, the cell phone records, and Crawford's DNA on items recovered from the crime scene – the introduction of the police report would not make it "more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt" of Crawford's guilt. <u>House</u>, 547 U.S. at 554; <u>see also</u> <u>Hayes v. Carver</u>, 922 F.3d 212, 216 (4th Cir. 2019) (Where "none of [the] evidence contradicts, or even undermines, the essential testimony of the identifying witness or the State's other evidence," the petitioner does not meet the stringent, gateway actual innocence standard). In denying the Motion to

---

[15] The photo-lineup introduced at trial, Commonwealth's Ex. 3, also includes a picture of Crawford.

Vacate, the circuit court judge reviewed the alleged exculpatory evidence and found that "[e]ven of they were exculpatory, they were not of such a nature as to undermine the confidence in the outcome of the trial." (Vol. II at 63-64). The claims in the instant petition are defaulted, which precludes federal habeas review.

### IV. Statute of Limitations

A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). In calculating the one-year period, however, the Court must exclude the time during which properly filed state collateral proceedings pursued by petitioner were pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts).

On March 10, 2008, the Court of Appeals denied Crawford's petition for appeal and Crawford did not appeal the denial of his petition for appeal to the Supreme Court of Virginia. Consequently, his state court direct appeal proceedings concluded on April 9, 2006, the last date on which Crawford could have filed a petition for appeal to the Supreme Court of Virginia in his criminal case. See Gonzalez v. Thaler, 565 U.S. 134, 149 (2012) (holding that if a state prisoner does not pursue the highest level of review available to him in the state court system, he is not entitled to the additional 90 days for seeking certiorari review in the Supreme Court of the United States).

Even assuming that the federal period was tolled from April 9, 2006 through the dismissal of Crawford's third state habeas petition on February 11, 2009, the statute ran on

16

February 11, 2010. Even if his claims were not defaulted, Crawford's § 2254 petition is untimely unless the limitations period is tolled. The record establishes that Petitioner is not entitled to statutory or equitable tolling.

### A. Statutory Tolling

After the dismissal of his third state habeas, the next matter filed was the first motion to vacate, which was filed by counsel, at the earliest, on August 26, 2015.[16] (Vol. II at 8-10). By the time this motion was filed, the federal statute of limitations had already lapsed. Crawford has not pointed to any statutory provision that would allow him a delayed commencement of the statute of limitations. Nor do any of the other tolling provisions of the statute apply to his case. The current petition should be dismissed as time barred.

### B. Equitable Tolling

A habeas petitioner may be permitted to file a federal habeas petition out of time if he can establish that he is entitled to equitable tolling. Equitable tolling is available in federal habeas only where the petitioner shows: (1) he pursued his rights diligently; and (2) some extraordinary circumstance prevented him from timely filing his habeas petition. See Holland v. Florida, 560 U.S. 631, 649 (2010). See also Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008). The petitioner "bears the burden of demonstrating that he is entitled to equitable tolling." Vroman v. Brigano, 346 F.3d 598, 604 (4th Cir. 2003). Crawford has not satisfied that burden.

"In certain circumstances, 'the same facts supporting a Brady claim [will] also support the application of the doctrine of equitable tolling.'" Jefferson v. United States, 730 F.3d 537, 549 (6th Cir. 2013) (quoting Wardlaw v. Cain, 541 F.3d 275, 279 (5th Cir. 2008)). A Brady claim, however, does not necessarily entitle a habeas petitioner to equitable tolling. See Ford v.

---

[16] The actual motion was filed until October 8, 2015. (Vol. II at 39-45).

Gonzalez, 683 F.3d 1230, 1238 (9th Cir. 2012). In rejecting the petitioner's argument for tolling

based upon a Brady claim, Ford noted that several other federal circuits had found Brady claims

time-barred, and we agree that the statute of limitations may bar such claims in appropriate

circumstances. See, e.g., Daniels v. Uchtman, 421 F.3d 490, 492 (7th Cir. 2005) (noting that

information supporting petitioner's Brady claim could have been discovered more than one year

prior to petitioner's filing of his federal habeas petition); Lucidore v. N.Y. State Div. of Parole,

209 F.3d 107, 111, 113 (2d Cir. 2000) (dismissing Brady claim as time barred where petition was

filed almost two years after the petitioner obtained the exculpatory materials).

Here, Crawford has not diligently pursued his rights. Crawford knew about the basis of

his claim at least by the time of his sentencing in May 2004, and no later than his receipt of the

presentence report from his counsel in January 2009 – both dates were well prior to filing his

2015 state motion to set aside the verdict. The second state motion to vacate was dismissed on

January 26, 2017 and the petition for rehearing was refused by the Supreme Court of Virginia on

March 22, 2018. Crawford, however, did not execute the present federal petition until April 9,

2021, see Houston v. Lack, 487 U.S. 266, 276 (1988), which is over three years after the last

state proceeding concluded. Crawford did not diligently pursue his rights, and equitable tolling

does not apply. See Elmore v. Lewis, No. 9:16-1064, 2016 U.S. Dist. LEXIS 181260, *16

(D.S.C., Sept. 30, 2016) (no equitable tolling when petitioner delayed three years after he

claimed he discovered basis for Brady claim).

In addition, Crawford has no viable Brady claim and hence it cannot serve as a basis for

tolling. "To secure relief under Brady, a defendant must: (1) identify the existence of evidence

favorable to the accused; (2) show that the government suppressed the evidence; and (3)

demonstrate that the suppression was material." United States v. King, 628 F.3d 693, 701 (4th

18

Cir. 2011) (citing Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir. 2003)). Crawford bears the burden to establish a Brady violation. Id. Evidence is "material" when there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433 (1995).

Even assuming that the information in the police report was favorable to Crawford and that the police report was suppressed by the prosecution, Crawford has not shown that the information was material. Other evidence establishes that Crawford was identified by phone records as the person who contacted the victim by telephone on the night of the shootings, his height and weight were accurately described by the victim; the victim immediately identified Crawford as the person who shot her when shown a photo-lineup; the jury heard a 911 recording of the crime in progress that included Crawford's voice on the recording; Crawford's DNA was discovered on a beer bottle and a cigarette butt recovered from the victim's apartment; and, at trial, the victim identified Crawford as the person who shot her. (1/13/2004 Tr. at 56, 58-61, 67, 81-83, 100, 150-51, 203, 286, 289-91).

Furthermore, the presentence report prepared for Crawford's sentencing set out each of the specific items Crawford now claims he did not learn about until 2015 in the "Commonwealth's Version" of the "Narrative of the Current Offense." [Dkt. No. 1-1 at 49]. Crawford's counsel did not assert during the sentencing hearing either that he was unaware of or that he had not been provided this information, and Crawford had ample time to assert a Brady violation at sentencing or in a timely post-trial motion. If denied, then Crawford could have pursued the claim on appeal.

For all of these reasons, Crawford has not satisfied the two-pronged test of Holland. He has demonstrated neither extraordinary circumstances nor reasonable diligence. See Holland, 560 U.S. at 651-52. The current federal habeas corpus petition should be dismissed as time barred.[17]

### C. Actual Innocence

In McQuiggin, the Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or as in this case, expiration of the statute of limitations." 569 U.S. at 386. The Court noted, however, that "tenable actual-innocence gateway pleas are rare." Id. The Court cautioned that the standard for showing actual innocence under Schlup, is "demanding," and the timing of the filing of the habeas petition "is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." Id. at 387 (quoting Schlup, 513 U. S. at 332). As noted above, a gateway claim requires the petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." Schlup, 513 U.S. at 324.

As noted above regarding Crawford's procedural defaults, he has not provided new, reliable evidence sufficient to establish actual innocence. To satisfy the test to excuse a statute of limitations bar, a petitioner must demonstrate that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." McQuiggin, 569

---

[17] Martinez v. Ryan, 566 U.S. 1 (2012), provides that a state prisoner may, in certain circumstances, overcome a state procedural default of an ineffective trial counsel claim in his federal habeas case. Martinez, however, has no application to Crawford's petition because he has not alleged trial counsel was ineffective and, in any event, Martinez "'has no application to the operation or tolling of the § 2244(d) statute of limitations' for filing a § 2254 petition." Lambrix v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1246, 1262 (11th Cir. 2014) (citation omitted); see Wilson v. Perry, No. 1:14CV576, 2014 U.S. Dist. LEXIS 131561, at *3 (M.D.N.C. Sept. 19, 2014) ("Martinez and Trevino [v. Thaler, 569 U.S. 413 (2013)] each addressed whether a procedural bar, rather than a time bar, should apply to an ineffective assistance of counsel claim from a state habeas proceeding. Thus, Martinez and Trevino are inapplicable to the determination of untimeliness under the AEDPA one-year statute of limitations."), appeal dismissed, 588 F. App'x 216 (4th Cir. 2014); see also Couch v. Woodson, No. 3:13cv146, 2013 U.S. Dist. LEXIS 158461, at *6 (E.D. Va. Nov. 5, 2013) (collecting cases).

U.S. at 386-87 (emphasis added) (quoting <u>Schlup</u>, 513 U.S. at 329). Crawford has not met this burden.

Crawford's claims are defaulted. and his petition is untimely

**\*\*\*\***

Crawford has moved for appointment of counsel and has other outstanding motions. Petitioner, however, has no right to counsel in seeking habeas corpus relief in the federal courts. <u>See</u> <u>McCleskey v. Zant</u>, 499 U.S. 467, 495 (1991); <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987). Although the Court has discretion to appoint counsel if it "determines that the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B), counsel should only be appointed under "exceptional circumstances." <u>Whisenant v. Yuam</u>, 739 F.2d 160, 163 (4th Cir. 1984). Petitioner has presented no exceptional circumstances. Further, appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing. <u>See</u> Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a), 8(c). The claims before the Court do not require discovery and concern historical matters based upon the record and do not require a hearing. <u>Cf.</u> <u>Bennett v. Angelone</u>, 92 F.3d 1336, 1347 (4th Cir. 1996) (denying petitioner's request for an evidentiary hearing because he "add[ed] nothing 'additional' to the factual mix already before the district court"). The motion for appointment of counsel [Dkt. No. 2]will be denied.

Petitioner filed motions objecting to the respondent's motion for extension of time to file a response, and his motions [Dkt. Nos. 11, 21] will be denied and the motion for extension of time [Dkt. No. 10] will be granted nunc pro tunc, June 2, 2021 and the response is deemed timely filed.

Petitioner has also moved to admit noncertified copies of transcripts. [Dkt. Nos. 13, 24]. The motions will be denied. The state court provide the originals of the trial transcripts, and the

preliminary hearing transcript was not filed during the state proceedings. Further, the preliminary hearing transcript is not relevant to the defaults or timeliness of his petition.

Respondent moved to amend his motion to dismiss because of a scrivener's error with regard to the court of conviction. [Dkt. No. 25]. Petitioner's objection is overruled, and the motion is granted nunc pro tunc to June 30, 2021.

### V. Conclusion

For the foregoing reasons, the motion to dismiss (as corrected) [Dkt. Nos. 16, 25] the petition must be granted, and the petition must be dismissed with prejudice. Petitioner's motions [Dkt. Nos. 2, 11, 13, 21, 24] will be denied, and respondent's motion [Dkt. Nos. 10, 25] will be granted. An appropriate Order shall issue.

Entered this 27 day of _____ Jan _____, 2022.

_____
United States District Judge

Alexandria, Virginia